UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON LANISE MCKENZIE,

              Plaintiff,                       Case No. 2:15-cv-14488
                                                 District Judge Avern Cohn
v.                                         Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (DE 13) AND DENY
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 16)**

## I.    RECOMMENDATION

For the reasons that follow, it is **RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment, **DENY** Defendant's motion for summary judgment, **REVERSE** the Commissioner's decision, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with the report below.

## II.    REPORT

Plaintiff, Sharon Lanise McKenzie, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance

benefits and supplemental security income.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 13), the Commissioner's memorandum in opposition and

cross motion for summary judgment (DE 15), Plaintiff's reply (DE 16), and the

administrative record (DE 11).

### A.    Background

Plaintiff protectively filed her applications for benefits on June 18, 2012,

alleging that she has been disabled since July 26, 2011.  (R. at 225-28, 229-234.)

Plaintiff's applications were denied and she sought a *de novo* hearing before an

Administrative Law Judge ("ALJ").  ALJ Kevin W. Fallis, held a hearing on

March 19, 2014.  (R. at 92-141.)  He subsequently determined that Plaintiff was

not disabled within the meaning of the Social Security Act.  (R. at 79-88.)   On

November 6, 2015, the Appeals Council denied Plaintiff's request for review.  (R.

at 1-4.)  ALJ Fallis's decision became the Commissioner's final decision.  Plaintiff

then timely commenced the instant action.

### B.    Plaintiff's Medical History

Dr. Muhammad Al-Madani diagnosed Plaintiff with Hepatitis C in 2011,

which was confirmed by a November 17, 2011 liver biopsy.  (R. at 298 and 324.)

In October 2011, she reported to the Hamilton County Health Network ("HCHN"),

where she was diagnosed with hypertension, edema, diabetes, and obstructive sleep

apnea. (R. at 342.) The sleep apnea was confirmed by the results of a January 2012 sleep study. (R. at 351.) She was diagnosed with chronic obstructive pulmonary disease on January 11, 2012. (R. at 340.)

Plaintiff underwent a consultative examination with Harold Nims, D.O., on November 8, 2012. (R. at 366-370.) Dr. Nims found that she had normal function, strength, and range of motion in her extremities, but that her "primary limiting factor" was shortness of breath associated with COPD. (R. at 370.) He observed that she suffered from shortness of breath during the examination. (*Id*.) Dr. Nims opined that, although Plaintiff's physical exam was normal, her ability to perform work-related activities was "significantly impaired" due to her shortness of breath. (*Id*.)

Plaintiff returned to see Dr. Donald Robinson at HCHN in May 2013, complaining of asthma and COPD. (R. at 387-88.) Plaintiff explained that she had been unable to seek treatment for over a year because she lost her insurance. (R. at 388.) Dr. Robinson noted that both Plaintiff's hypertension and COPD had deteriorated since her last visit. (R. at 389-390.) On July 22, 2013, Dr. Robinson again noted that Plaintiff's COPD had deteriorated. (R. at 385.)

### C.   Plaintiff's Hearing Testimony

Plaintiff's relevant hearing testimony is addressed in the analysis section below.

3

### D.     THE ADMINISTRATIVE DECISION

On May 30, 2014, the ALJ issued his decision.  (R. at 79-88.)  At Step 1 of

the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

substantially gainful activity since July 26, 2011.  (R. at 81.)

At Step 2, the ALJ found that Plaintiff had the following severe

impairments: COPD, hepatitis C, obstructive sleep apnea, and obesity.  (R. at 81.)

At Step 3, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the  review, *see Colvin v.
Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

   1.     Is the claimant engaged in substantial gainful activity?
   2.     Does the claimant suffer from one or more severe impairments?
   3.     Do the claimant's severe impairments, alone or in combination, meet
          or equal the criteria of an impairment set forth in the Commissioner's
          Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
   4.     Considering the claimant's residual functional capacity, can the
          claimant perform his or her past relevant work?
   5.     Considering the claimant's age, education, past work experience, and
          residual functional capacity, can the claimant perform other work
          available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2:15-cv-14488-AC-APP   Doc # 17   Filed 09/30/16   Pg 5 of 21   Pg ID 496

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically,

Listings 3.02, 3.03, 5.05, 3.09, and 12.02.  (R. at 82.)

Between Steps 3 and 4 of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had

the capacity to perform light work:

> [L]ifting up to 20 pounds occasionally; lifting/carrying up to 10
> pounds frequently; standing/walking for about 6 hours and sitting for
> up to 6 hours in an 8-hour workday, with normal breaks; never
> climbing ladders, ropes or scaffolds; occasional climbing of ramps or
> stairs; occasional balancing, stooping, kneeling, crouching or
> crawling; must avoid even moderate exposure to extreme cold and
> heat; must avoid even moderate exposure to humidity; must avoid
> even moderate exposure to environmental irritants such as fumes,
> odors, dusts and gases.  Must avoid all use of hazardous moving
> machinery and all exposure to unprotected heights.  *Use of mobil[e]
> oxygen during the workday.*

(R. at 82-83) (emphasis added).

The ALJ determined at Step 4 that Plaintiff was unable to perform her past

relevant work.  (R. at 86.)

At Step 5, the ALJ concluded that Plaintiff was capable of performing other

jobs that exist in significant numbers in the national economy.  (R. at 87-88.)  He

therefore concluded that Plaintiff was not disabled under the Social Security Act.

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th
Cir. 2002).

## E.   STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

6

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    ANALYSIS

Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence for two main reasons.  First, she contends that the ALJ improperly weighed opinion evidence by giving great weight to the non-examining state agency consultant and discounting the weight given to the opinion of an examining physician.  Second, she argues that the ALJ improperly discounted her credibility based on noncompliance with treatment and by considering her cocaine use in 1982.  The Commissioner opposes Plaintiff's motion, asserting that she is

entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions.  I will address each argument in turn.

### 1.    Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(b).  The regulations define medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 CFR § 404.1527(e)(2)(i).  The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  To qualify as a treating

source, the physician must have an "ongoing treatment relationship" with the claimant.  20 C.F.R. § 404.1502.

Here, Plaintiff asserts that the ALJ improperly afforded "great weight" to the opinion of non-examining State agency consultant Dr. Nelson, while according "little weight" to the examining physician, Dr. Nims, whose opinion she contends is supported by objective evidence in the record.[2]  Specifically, Plaintiff takes issue with the ALJ's conclusion that Dr. Nims' opinion that her ability to bend, stoop, lift, walk, crawl, squat, push, pull, carry, and travel was significantly impaired was "contrary to his physical examination that was essentially normal."  (R. at 86.)  Plaintiff argues that Dr. Nims' opinion was consistent with his objective observation that she became short of breath during the examination, as well as objective pulmonary function testing.  (R. at 368, 370, and 375-81.)  Plaintiff asserts that Dr. Nelson's non-examining opinion that she is capable of restricted light work is not properly explained or supported by substantial evidence, and therefore should not have been accorded more weight that Dr. Nims' examining opinion.  (R. at 86.)

---

[2] Neither party argues that Dr. Nims qualified as a treating source, as he saw Plaintiff only once.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (noting that a "plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship.").

Defendant counters that the ALJ is entitled to give a non-examining opinion greater weight than that of an examiner where the evidence of record substantially supports the non-examining opinion.  Here, Defendant asserts, Dr. Nims reported that Plaintiff's physical examination was normal, making his work-related restrictions inconsistent with his findings.  (R. at 370.)

Generally, the ALJ will give more weight to an examining source than a non-examining source.  20 C.F.R. § 404.1527(c).  Pursuant to 20 C.F.R. § 404.1527(c)(1), however, the ALJ may afford greater weight to the opinions of State agency medical consultants than to the opinions of examining sources "[i]n appropriate circumstances."  *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (quoting S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).  Such appropriate circumstances exist, for example, where the opinion of the State agency medical or psychological consultant is "based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  S.S.R. 96-6p, 1996 WL 374180 at *3.  Further, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion."  20 C.F.R. §

404.1527(c)(3).  Finally, more weight will be given to opinions that are consistent with the record as a whole.  20 C.F.R. § 404.1527(c)(4).

In the instant case, the ALJ concluded that the opinion of Dr. Nelson was "consistent with the evidence of record, including [Plaintiff's] treatment record that confirmed very little recent treatment, [and had] no severe findings on clinical examination or pulmonary function testing."  (R. at 86.)  In making this analysis, state agency medical consultant Dr. Nelson reviewed consultative examiner Dr. Nims's opinion and afforded it "no weight," noting that it was inconsistent with the objective evidence, specifically citing that Plaintiff had "no observable [shortness of breath]" at the consultative examination.  (R. at 150.)  This conclusion is untrue, however, as Dr. Nims expressly stated that Plaintiff was "having some shortness of breath during the exam[.]"  (R. at 370.)

Dr. Nims did, as the ALJ and Dr. Nelson both observed, conclude that Plaintiff's upper and lower extremities had normal function, strength, and range of motion, but noted that her "primary limiting factor" was shortness of breath associated with COPD.  (*Id*.)  The ALJ explained that such a finding was inconsistent with objective pulmonary function testing that confirmed only "possible moderate restriction."  (R. at 86, 377-381.)  The ALJ did not, however, explain how these findings were inconsistent with Dr. Nims' assessment that Plaintiff's ability to perform work-related activities was significantly impaired, an

11

opinion which was formed after actually observing Plaintiff. Furthermore, and related to Plaintiff's credibility argument, the ALJ based his assignment of "great weight" to Dr. Nelson's opinion in part upon its consistency with Plaintiff's treatment record that confirmed "very little recent treatment[.]" (R. at 86.) The ALJ notes that Plaintiff "had not been to the clinic in over one year due to a lack of funds" (R. at 85), and acknowledged at the hearing that Plaintiff claims insurance-related difficulties in obtaining treatment (R. at 107), which could easily explain the lack of treatment in her recent history; yet this was not addressed in any meaningful way in the ALJ's opinion. Nor is there any indication that Dr. Nelson's opinion contained more detailed and comprehensive information than what was available to Dr. Nims. As such, I conclude that the ALJ failed to properly weigh the opinions of Drs. Nelson and Nims and recommend that this issue be remanded to the Commissioner for further analysis consistent with this opinion.

### 2. Plaintiff's Credibility Assessment

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008); *see also Beavers v. Sec'y of Health, Ed., and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) ("The opportunity to observe the demeanor of a witness, evaluating what is said in

the light of how it is said, and considering how it fits with the rest of the evidence gathered before the person who is conducting the hearing, is invaluable, and should not be discarded lightly."). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 247.

Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531; *see also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011) ("Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."). When assessing an individual's credibility, "the ALJ must [first] determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011).

Upon making such a finding, the ALJ must next "consider the entire case record" to "evaluate the intensity, persistence, and functional limitations of the

13

symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-

3); Soc. Sec. Rul. 96-7p.  A non-exhaustive list of relevant factors to be considered

by the ALJ include: 1) the claimant's daily activities; 2) location, duration,

frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the

type, dosage, effectiveness, and side effects of medication; 5) treatment, other than

medication; 6) any measures the claimant uses or has used to relieve his or her pain

or other symptoms; and 7) other factors concerning functional limitations and

restrictions.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014);

20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No.

10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security

Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .")

(emphasis in original) (citing *Kornecky*, 167 F. App'x at 508)).  In his or her

opinion, the ALJ must "provide a sufficiently specific explanation for his [or her]

credibility determination so that it is clear to the individual and any subsequent

reviewers the weight given to the individual's statements and the reasons for that

weight."  *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at

*7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1

(July 2, 1997)).

         **a.**    **Failure to comply, inability to afford medical testing
or treatment, and lack of insurance**

An ALJ may consider a claimant's failure to comply with treatment as a sufficient reason to discount credibility. *Sias v. Sec'y of Health & Hum. Servs.,* 861 F.2d 475, 480 (6th Cir.1988) (concluding that the ALJ properly discounted the claimant's credibility where he failed to follow prescribed treatment); S.S.R. 96–7p, 1996 WL 374186, at *8 (noting that "the individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."). Pursuant to Social Security Ruling 96-7P, however, an ALJ may not draw:

> any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

S.S.R. 96-7P. For example, the ALJ should consider the claimant's explanation where the individual "may be unable to afford treatment and may not have access to free or low-cost medical services." *Id*. Similarly, Social Security Ruling 82-59 provides that inability to afford treatment is a justifiable cause for failing to follow prescribed treatment. S.S.R. 82-59; *see also McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (agreeing with the conclusion that a "condition that is disabling in fact continues to be disabling in law," when the claimant "cannot afford

prescribed treatment or medicine and can find no way to obtain it.") (internal quotations omitted).

Here, Plaintiff testified to lacking insurance, which rendered her unable to obtain treatment such as oxygen tanks. (R. at 107.) She also testified to her inability to obtain x-rays and MRIs because her insurance money ran out. (R. at 111.) Plaintiff further explained that she had not gone to a hospital or clinic since July 2013, because her insurance ran out and she had no means of transportation. (R. at 112.) The ALJ noted that he was discounting Plaintiff's credibility, in part, because she was "non-compliant with the use of the CPAP machine" and there were "no treatment records after July 22, 2013." (R. at 84 and 86.)

The ALJ does not address Plaintiff's inability to pay for such treatment. As the Commissioner points out, the ALJ does note that Plaintiff was smoking one pack of cigarettes per day during the relevant time period. (R. at 86.) Contrary to the Commissioner's arguments, however, he does not analyze Plaintiff's smoking habit in the context of her ability to pay for cigarettes rather than treatment. (R. at 86.) Instead, he makes a general determination that smoking, even while using oxygen, cuts against Plaintiff's complaints of disabling COPD. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's

*post hoc* rationalization for agency action . . . .'" (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F. 2d 361, 367 (6th Cir. 1991)).

### b.      Cocaine use from thirty-four years ago

The ALJ also cites to Plaintiff's "cocaine use" as a reason that her condition is not disabling.  (R. at 86.)  Plaintiff argues that this was in error, as the medical evidence indicates that she has not used the drug since 1982.  (DE 13 at 16 (citing R. at 367).)  Notwithstanding the deference which is normally given to an ALJ's credibility findings, I am inclined to agree that, without more, cocaine use over 30 years ago hardly discounts her present credibility, particularly where there is no evidence of current or recent use; or, at best, it is unclear to the reviewing Court how this remote cocaine use could have affected or did affect the ALJ's analysis of Plaintiff's credibility of the time of her March 2014 hearing.  The Commissioner seemingly concedes this point, but argues that any potential error the ALJ made in considering the drug use was harmless, because the ALJ properly considered other factors when making his credibility findings, including medical evidence showing only mild to moderate findings, her continued smoking, and the opinion of Dr. Nelson.  (DE 15 at 19.)[3]

---

[3] The Commissioner concedes that, "Plaintiff's drug use appears to have ended long ago[.]"  (DE 15 at 19.)  Indeed, the Commissioner's record references suggest no illegal drug use *of any kind* since 1992. (*Id.,* citing R. 120-121, 339-340, 367.)

As noted above, the ALJ's credibility determination is entitled to great deference. Indeed, "an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation and external citation omitted). The credibility determination must stand so long as it is supported by substantial evidence. *McGrath v. Comm'r of Soc. Sec.*, 12-11267, 2013 WL 4507948, at *4 (E.D. Mich. Aug. 23, 2013). Here, however, it is unclear that the opinion is supported by substantial evidence in the record. For example, I have already concluded that the ALJ erred in his weighing of opinion evidence, including the assignment of "great weight" to the opinion of state agency medical consultant Dr. Nelson. Further, the ALJ failed to account for Plaintiff's inability to afford treatment, and instead discounted her credibility based on a lack of treatment and noncompliance. Moreover, his conclusion that her medical testing revealed only minimal or moderate findings could be impacted by her inability to afford more frequent or more sophisticated medical testing due to a lack of insurance. As such, the only basis on which the ALJ properly discounted Plaintiff's credibility was the fact that she continued to smoke while on oxygen, leaving it unclear to this Court whether the above-described errors were "harmless." Accordingly, I also recommend that, upon remand, the ALJ be instructed to re-evaluate Plaintiff's credibility to address the errors identified in this report and recommendation.

18

### 3.    Remand Under Sentence Four

The Social Security Act authorizes "two types of remand: (1) a post

judgment remand in conjunction with a decision affirming, modifying, or reversing

a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment

remand for consideration of new and material evidence that for good cause was not

previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v.*

*Sec'y of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994) (citing 42

U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to

"enter, upon the pleadings and transcript of the record, a judgment affirming,

modifying, or reversing the decision of the Commissioner . . ., with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Where there is

insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

a sentence-four remand for further consideration." *Morgan v. Astrue,* 10–207, 2011

WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher,* 17 F.3d at 174); *see*

*also White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 790 (6th Cir. 2009) ("If a

court determines that substantial evidence does not support the [Commissioner's]

decision, the court can reverse the decision and immediately award benefits only if

all factual issues have been resolved and the record adequately establishes a

plaintiff's entitlement to benefits." (internal quotations omitted)).  Here, there is

insufficient support for the ALJ's findings, and the factual issues have not been

resolved.  Accordingly, the Undersigned recommends that the Court remand this case for rehearing under Sentence Four.

### G.    CONCLUSION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g).  Accordingly, the Undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 13), **DENY** Defendant's motion for summary judgment (DE 15), **REVERSE** the Commissioner of Social Security's non-disability finding, and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. L. R. 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and be labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: September 30, 2016        s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 30, 2016, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti